Nov. Term, 1820.

GALLION
v.
M'CASLIN.

## GALLION *v.* M'CASLIN.

A purchaser of real estate cannot hold against a prior equitable title, if he have notice of the equity either before the payment of the purchase money, or the execution of the deed.

Notice of an equitable right, given to a purchaser by the tenant in possession under the claimant, is as available as if given by the party himself.

In case of conflicting equities, precedency of time gives the advantage in right.

1b 91
|153 674

APPEAL from the *Franklin* Circuit Court.—This was a suit in equity to obtain the legal title to a lot in *Brookville* (1).

BLACKFORD, J.—There is much difficulty in understanding this cause from a view of the record. The answer cannot be reconciled with the depositions, and the depositions themselves are at variance with each other. The following, however, is believed to be a correct state of the case. In *March*, 1816, *Henry M'Caslin* purchased a town lot in *Brookville* from *Thomas Clark* for a valuable consideration; a penal bond was given by *Clark*, conditioned for the execution of a deed a short time afterwards; and the purchaser entered into possession. About a year after *M'Caslin's* purchase and possession, *Nathan D. Gallion* bought the same lot of *Clark*, paid a part of the purchase money, and took a bond conditioned for a title, without any notice of the prior incumbrance. While a considerable part of the purchase-money remained unpaid by *Gallion*, and

Saturday,
November 11.

Nov. Term,
1820.

GALLION
v.
M'CASLIN.

before the execution of the deed to him from *Clark* for the pre-mises in dispute, *Gallion* was informed by one *Allan Ramsay,* that the lot belonged to *M'Caslin,* who had bought and paid for it; and by *William Herndon,* the tenant in possession, that the lot was claimed by *M'Caslin,* under whom he occupied. After this, *Gallion* and *Clark* prevailed upon *Herndon* to give up the premises; and *Gallion* entered into possession. The next day after the information of *M'Caslin's* claim had been given to *Gallion,* he hurried away, and obtained from *Clark* the legal title for the lot in question. *M'Caslin* filed a bill in chancery, and had a decree in the Court below; from which *Gallion* has appealed to this Court.

The title bond upon which the complainant below founded his claim, was certainly an equitable lien on the property; and if the defendant purchased with a knowledge of that incumbrance, he must lose the cause. 3 Atk. 238. On the contrary, if he is an innocent purchaser for a fair consideration; if he paid his money and received his deed, without sufficient notice of such prior right; his title cannot be impeached either at law or in equity. 1 Eq. Cas. Abr. 333. The bill charges the sale and conveyance by *Clark* to *Gallion* on the 19th of *March,* 1817; and alleges that *Gallion,* at that time, and before such purchase, had full knowledge of the complainant's right. The answer states, that the defendant purchased on or about the 9th of *March,* 1817, paid part of the purchase-money, and received from *Clark* a title bond; and that, at the time of the purchase, he had no knowledge of any prior incumbrance. It admits the information of *Ramsay* on the 18th of *March,* 1817; and says that *Clark,* for the first time, on the 19th of *March* following, told the defendant something about *M'Caslin's* claim, which he declared to be forfeited. Now, what is here set out in the answer may be all true, that the defendant knew nothing of the incumbrance on or about the 9th, when he made his contract; that *Ramsay* told him on the 18th; and that *Clark* did not tell him till the 19th; and yet, at the same time, he might have received, from a hundred other persons, clear and undoubted notice of the complainant's equity, before the execution of the deed. The charge therefore in the bill, of the defendant's knowledge of the complainant's right, at and before the sale and conveyance on the 19th of *March,* 1817, is no where denied in the answer; and, so far as *Ramsay's* information goes, is

expressly admitted. Besides, before the execution of the deed, or the payment of a considerable part of the purchase-money, the defendant had been told by the tenant in possession, that he rented of the complainant, who claimed the property. Here was not only notice of a tenancy, but fair notice by the tenant of his lessor's claim. *Herndon* may be considered as the agent of *M'Caslin;* and notice given by an agent is as effectual as if given by the principal himself. The tenant refused over and over again to give up the possession; and he could not, at last, be prevailed upon by *Gallion* and *Clark* to do so, until they had obligated themselves by bond, to indemnify him against his lessor for any damages he should sustain for such a breach of trust. After all this, we cannot but believe that the defendant had sufficient knowledge of the complainant's title, to put him upon an inquiry about it, before he completed his purchase.

Let us next examine, whether this notice was given to the defendant in time to render it obligatory. But a small part of the consideration-money had as yet been paid. The consideration was 500 dollars; of which, only 150 dollars were paid at the time of the contract. For the balance, the defendant gave *Clark* a title bond for a lot in *Brookville* valued at 200 dollars, and his note for 150 dollars. Before the defendant complied with the condition of his bond by making a deed for the lot, and before he paid the note of 150 dollars, he had received the notice of the complainant's claim to the property (2). Independently, however, of the circumstance, that so small a part of the purchase-money had been really paid previously to notice, there is another fact in the case that must put it to rest. It is not denied by the answer, and is expressly proved, that the notice of this outstanding right had been given to the defendant, before the execution of the deed to him by *Clark.* In the case of *Wigg* v. *Wigg,* 1 Atk. 384, it is determined, that although a purchaser does not know of an incumbrance before he pays his money, yet if he knows it before the deed is executed, it affects him with notice. This case is directly against the defendant. See also 18 Vin. Abr. 115. Take it for granted, that the defendant had fairly obtained an equitable title without any knowledge of the complainant's equity: at that time, the parties stood upon equal ground as to the nature of their claims; and the right of the complainant, being the eldest, was entitled to the preference. But it is contended, that the defendant went on and procured

the legal title, and thus obtained an advantage which ought not to be taken from him. It is true, the purchase-money was afterwards paid, and the title perfected; and had this been done before notice of *M'Caslin's* claim, the defendant would have been perfectly safe. But the fact is otherwise. *Gallion* had nothing but an equitable lien before notice. Every step he afterwards took towards getting the possession and conveyance, was fraudulent and void. The cases of getting in any old incumbrance to protect a subsequent claim, do not apply. For example, a third morgagee may buy in the first mortgage, and thus get an advantage over the second. Here is no injury. The second mortgagee is deprived of no benefit to which he was entitled. Neither the second nor the third mortgagee had any claim to the first mortgage. Each of them had the same privilege of buying it in, and thus obtaining any benefit under it, to which it was originally entitled (3). But, in the present case, *M'Caslin* had the prior equitable right to the legal title from *Clark;* and, after *Gallion* had notice of it, his endeavour to procure that title, and thus devest *M'Caslin* of his claim, was unjustifiable. The defendant knowingly attempted to destroy the complainant's prior and therefore superior equitable right, by strengthening the younger and inferior one of his own by procuring the legal title from *Clark,* to which the complainant was best entitled. In such proceedings, the defendant cannot be protected in a Court of equity. We must put out of view every thing done by him after notice. Before that time, each of the parties had an equitable claim, and neither of them had any thing more. In that situation of their controversy, there is but one way to determine between them. Whoever first acquired his right, must have the property; for, in cases of conflicting equities, precedency of time gives the advantage in right. 1 Bibb, 523. We are of opinion, that at the time the defendant received information of a prior incumbrance, he was bound to stop and inquire into it; and, after satisfying himself of its existence, to retrace his steps. Instead of doing so, however, we find him after this notice, combining with *Clark,* and assisting him in inducing the tenant of the complainant to give up possession. We see him, after this notice, hastening to the house of *Clark* to procure from him the legal title. Under these circumstances, the Court cannot but consider the defendant a *mala fide* purchaser.

whose claims to the property in question must yield to the prior equitable right of the complainant (4).

*The Court* entered a decree in favour of the complainant.

*Caswell*, for the appellant.

*Lane*, for the appellee.

(1) Cases in equity, determined in the Circuit Courts, are removed to the Supreme Court either by appeal or writ of error, in the same manner as common law cases. Ind. Stat. 1817, p. 6—11;—1823, p. 130—133. The Supreme Court, in revising decrees in equity, are not confined, as in common law cases, to errors in law: but the practice of the Court is, to examine into the merits of the cause upon the evidence in the record; affirm or reverse the decree in part or in the whole; and either remit the record for further proceedings, or render a final decree and enforce it in the ordinary mode. In the Supreme Court of the *United States*, the practice under the judiciary act of 1789, was, for chancery cases to be removed thither only by *writ of error*, with a statement of facts in the record, agreed on by the parties, or made out by the Court below. 2 L. U. S. 63, 64. *Wiscart* v. *Dauchy*, 3 Dall. 321. But by the act of 1803, the decrees of the Circuit Court in chancery, can only be removed to the Supreme Court by *appeal;* and the record must contain a copy of the bill, answer, depositions, parol testimony if any, and all other proceedings, of what kind soever, in the cause. The Supreme Court judges of the *facts* as well as of the *law*, and determines the merits of the case upon the *same evidence* that was before the Circuit Court. 3 L. U . S. 560. *The San Pedro*, 2 Wheat. 132, 137.—*Conn* v. *Penn*, 5 Wheat. 424. In the Court of Errors in *New-York*, the rule on appeal in chancery cases, is, to examine all the testimony adduced in the Court below, and decide upon the merits of the cause. *Le Guen* v. *Gouverneur*, 1 Johns. Cas. 436, 498. And in the House of Lords in *England*, the practice is the same. Ibid.—3 Bl. Comm. 454.—2 Madd. Ch. 578.

(2) Notice at any time before the actual payment of the purchase-money, is obligatory. *Jones* v. *Stanley*, 2 Eq. Cas. Abr. 685.—*Tourville* v. *Naish*, 3 P. Wms. 307.—*Harrison* v. *Southcote*, 1 Atk. 528, 538.—*Story* v. Ld. *Windsor*, 2 Atk. 630.—*Frost* v. *Beekman*, 1 Johns. Ch. R. 288, 301.—*Murray* v. *Finster*, 2 Johns. Ch. R. 155.—*Jewett* v. *Palmer*, 7 Johns. Ch. R. 65. That it was secured to be paid before notice, is not sufficient. *Hardingham* v. *Nicholls*, 3 Atk. 304.—Sugd. Vend. 487.—*Jewett* v. *Palmer*, supra.

(3) The right of *tacking* a prior to a subsequent incumbrance, is founded on the maxim, that *where equity is equal, the law must prevail.* Thus, when a third mortgagee without notice, having equal equity with the second, buys in the first mortgage, which carries with it the *legal estate*, he has both *law* and *equity* on his side, and squeezes out the second mortgagee, who has only an *equitable* title. This was settled in *Marsh* v. *Lee*, 2. Vent. 337, by Ld. *Hale*, who calls it the creditors *tabula in naufragio.* The doctrine of *tacking*, however, has been frequently considered in *England* as having a great appearance of hardship. 2 Cruise on R. P. 207—250. It is not recognized in *Ireland*, in consequence of the registry act. *Latouche* v. Ld. *Dunsany*, 1 Sch. and Lefr. 137, 157. And in *New-York* it is held, that as a preference is there given by statute to registered mortgages, according to the times of their respective regis-

Nov. Term, try, the doctrine of *tacking* does not apply to them. *Grant* v. *U. S. Bank*, 1
**1820.** Caines' Cas. 112, 120.—*Bridgen* v. *Carhartt*, 1 Hopk. 234. For the register
acts in *Indiana*, vide Ind. Stat. 1823, p. 331, and 2. 1825, p. 53.

(4) If *A*. enters into a contract with *B*. for the sale of land, and afterwards refuses to perform his contract, and sells the land to *C*. for a valuable consideration, *B*. may, by bill, compel *C*. to convey to him, provided he be chargeable with notice, at the time of his purchase, of *B*.'s equitable title under the agreement. *Champion* v. *Brown*, 6 Johns. Ch. R. 398, 402.