Nov. Term,
1860.

BENNETT
v.
WELCH.

*D. Sheeks, W. T. Otto* and *J. S. Davis*, for appellant.

*J. E. McDonald* and *A. L. Roache*, for appellee.

---

### BENNETT and Others *v.* WELCH.

Chancery causes, under the old practice, were decided in the appellate Courts on the weight of evidence, and hence the evidence was required to be by deposition, and not oral, and to be placed in the record.

Adult parties might, undoubtedly, waive these rules of practice, and be bound by the waiver, but it is error for a Court, trying a chancery cause, to admit oral evidence against infants, which is not placed in the record.

The mere proof of handwriting to exhibits, and writings made part of the pleadings, is excepted from these rules, and might be made by parol; but the execution of promissory notes mentioned in the complainant's bill, but not made exhibits, could not be proven orally.

Under our present code the practice is different, and a decree against an infant will not be reversed because the evidence is not in the record.

Thursday,
December 13.

APPEAL from the *Tippecanoe* Circuit Court.

PERKINS, J.—This is an old chancery cause, and was decided by this Court at a former term. Subsequently, a rehearing was granted, the cause again submitted, and again have we examined it with a like result as before. We would gladly have affirmed the judgment below, and ended litigation in the cause, but have not been able to do it.

As we have said, this is an old chancery cause. Such causes must be decided in the appellate Court upon the weight of evidence.

Hence, in such causes the evidence must all be placed in the record.

Hence, the evidence is taken by way of depositions, and not orally; which depositions become a part of the record.

Adult parties may, undoubtedly, waive these rules of prac-

tice, and be bound by the waiver. But we take it that it is error for a Court, trying a chancery cause, to admit oral evidence against infants, which evidence is not placed in the record; because, unless we so hold, infants might be deprived of the benefit of their appeal. From this rule, the mere proof of handwriting to exhibits and writings made a part of the pleadings, is excepted. *Foote* v. *Lefavour*, 6 Ind. 473. Did the record in this case show no more than that, we might get along with it. But it does show more. It shows that parol evidence was given generally in the cause. What effect that evidence may have had upon the determination reached below, we can not tell.

The record states, on page twenty-two, which statement, being a part of the decree, we must regard, that the cause is submitted to the Court, upon bill, answers, depositions, &c., " and thereupon the Court, having examined witnesses orally, touching the truth of the matters and things in the said bill of complaint alleged, and the said complainant having exhibited and proven," &c.

The case of *Conn. et al.* v. *Penn.*, 4 Cond. Rep., (U. S.) p. 716, is in point. See, also, 3 Dan. Ch. Pr., Perk. Ed. 1025; Bart. Suit in Equity, p. 225.

Having concluded to reaffirm the former decision, we prefer to return to the record the opinion then written, as the final determination of the Court, to elaborating the case anew.

### Opinion on former submission.

WORDEN, J.—This was a suit in chancery, decided in 1845. *Welch*, the appellee, was complainant. The bill alleged, that in 1838 the complainant sold certain lands, described therein, to *William Bennett*, for the sum of $7,500; $3,000 of which was to be paid on the 25th of the next *December;* $2,250 on *December* 25, 1839; and the remaining $2,250, on *December* 25, 1840; the last mentioned sums to draw interest at the rate of 8 per cent. per annum, after twelve months from the day of sale. That *Bennett* gave the complainant his notes for the payments above mentioned, with *Jacob* and *Samuel Mustard* as his sureties. The agreement between

Nov. Term, 1860.

BENNETT
v.
WELCH.

the parties for the sale of the land was in writing, and, so far as it is necessary to notice it in this opinion, is as follows, viz.:

"Articles of agreement witnesseth: that *Turner Welch* hath sold to *William Bennett* and *Samuel Mustard*, all the land purchased of *Nehemiah Ellis* and *John Huff*, by said *Welch*, except one hundred and sixty acres; the part sold by said *Welch* to said *Bennett* and *Mustard*, containing four hundred and twenty acres, all in *Tippecanoe* county, *Indiana*, except seventy acres in the N. E. corner of *Fountain* county. The said *Bennett* and *Mustard* is to pay to said *Welch* for said land $7,500; $3,000 to be paid on 25th *December* next; $2,250 in one year afterward, and $2,250 in one year after that, and 8 per cent. interest to be paid, in advance, on the two last payments, after one year from this date."

It is averred that *Mustard* had no interest in the land, but that he became a party to the contract, merely as surety for *Bennett*. It is further alleged that the first installment of $3,000 has been duly paid, and a portion of the others, leaving a large balance unpaid. A subsequent contract was entered into between *Welch*, *Mustard*, and one *Sargeant*, contemplating an extension of time on the payments thus to be made; but as *Bennett* was not a party to it, and does not appear to have consented to it in any manner, any further notice of it will be unnecessary. *Bennett* died in 1841, before the filing of the bill. It is alleged that he took possession of the lands under the contract, and continued such possession until his death, since which time they have been in possession of his administrator. It is also averred that the *Mustards* and the estate of *Bennett* are insolvent. It is alleged that the complainant, at the time of making the contract, was and still is seized in fee of the land, and then had and still has a good right to convey the same according to his contract. The *Mustards*, *Sargeant*, and the administrator, widow and heirs of *Bennett*, are defendants. Prayer that an account be taken of what was due the plaintiff, and that the land be sold for the payment thereof, and for other relief. As to part of the defendants the bill was taken as confessed; but the heirs of *Bennett*, who were infants, appeared by their

guardian *ad litem*, appointed for them, and answered in the usual manner.

The record shows, that a default having been taken against the other defendants, the cause was "set down for a hearing upon the bill and answers of said infants, by their said guardian, and of the said defendant, *Lydia*, (widow) exhibits and depositions; and thereupon the Court, having examined witnesses orally, touching the truth of the matters and things in the said complaint alleged, and the complainant having exhibited and proven, in open Court, the original agreements, copies of which are made a part of this bill of complaint, marked "*A*" and "*B*," and also the said two original notes for $2,250 each, referred to in said bill of complaint, do find the matters and things alleged in said bill of complaint to be true in substance and fact." Thereupon the Court found there was due the complainant $5,038 and 53 cents, and ordered the land described in the complaint to be sold for the payment thereof. It is insisted that there was not sufficient evidence before the Court to warrant the decree thus made.

There is no testimony in the record except the deposition of *Lawson Abbett*, the administrator of the estate of *Bennett*. He says, "he believes the following to be a correct description of the lands intended and meant by the parties to the original agreement, a copy of which is made a part of the bill of complaint in said cause, and marked *A*, to-wit: (here follows a list of lands corresponding with the lands described in the complaint, with the exception of one piece). The said lands, above described, have been uniformly assessed to the said *William Bennett*, deceased, and the taxes on the same, except that part lying in *Fountain* county, have been paid since his death, by his administrator."

This witness proves the death of *Bennett*, the names and ages of his heirs, the insolvency of the estate of *Bennett* as well as of the *Mustards*, and that the purchase was made for the sole benefit of his intestate. Except the above, no material fact is proven by him. The question recurs, whether there was sufficient evidence legitimately before the Court to warrant the decree against the heirs of *Bennett*.

It will be observed that the agreement between the parties describes no land whatever. The sale was of "all the land purchased of *Nehemiah Ellis* and *John Huff*, by said *Welch*, except," &c. Admitting that parol evidence may be resorted to, to show what lands were intended to be sold, or rather to show what one hundred and sixty acres were to be excepted out of the lands bought by *Welch*, of *Ellis* and *Huff*, still the evidence offered is vague and unsatisfactory. The witness says he *believes* the lands described by him were the lands intended by the parties. The foundation of his belief does not appear, nor do the sources of his information. He might believe it without having any information that would amount to the slightest evidence. The facts that the lands described by the witness have been uniformly assessed to *Bennett*, and that his administrator has paid the taxes thereon since his death, by no means prove that they are the lands he contracted for with *Welch*. We are not informed since what time they have been uniformly assessed to *Bennett*. The natural import of the language employed by the witness is, that they have been uniformly assessed to *Bennett* since they were taxable. If this be so, the testimony in this respect would rather repel the idea that they were the lands bought of *Welch*. We do not, however, rest the decision of the cause upon this point, but allude to this evidence in regard to the identity of the land, for the purpose of showing that perhaps it might be difficult to fully justify the decree below, were there no other objection to it.

The two notes of $2,250 each, given for the purchase money, the most of which was claimed to be unpaid, were not made exhibits, nor does the record contain any evidence whatever in respect to them. The record, it is true, states that the court examined witnesses orally touching the truth of the matters stated in the bill. It also states that the complainant exhibited in open court, and proved the notes. The agreements having been made exhibits, it was entirely proper to prove their execution orally on the hearing of the cause. *Gafney* v. *Reeves*, 6 Ind. 71.

But it is thoroughly established in this State, under the old practice, that the record in a chancery cause must contain all

the evidence except the oral proof of exhibits. *Gallion* v.

*McCaslin*, 1 Blackf. 95; *Pell* v. *Farquier*, 3 Blackf. 331. In the latter case the Court say: "The transcript of the record in a chancery suit should contain all the evidence given in the Court below, in order that the Supreme Court may determine the merits of the cause." *Vide*, also, *Gafney* v. *Reeves*, *supra*, and cases there cited. *Linn* v. *Barkey*, 7 Ind. 69; *Alexander* v. *Frary*, 9 Ind. 481; *Wells* v. *Sprague*, 10 Ind. 305. In *Linn* v. *Barkey* it was held to be "the settled practice in the *English* and *American* Chancery Courts to decide causes upon appeal on the weight of evidence without respect to the conclusion of the inferior Courts upon that evidence." Applying this principle to the case at bar, and how does it stand? The notes mentioned not being made exhibits, their execution could not be proven orally, and the case is before us without either the production of the notes or proof of their execution by *Bennett*. These notes having been given, as is alleged, for the purchase money, we think, in order to entitle the plaintiff to recover, they should have been produced and their execution proven in a legitimate manner, that the Court might ascertain from an inspection of them, and the indorsements thereon, if any, how much was due the complainant thereon, and also that they might be filed with the papers in the cause, being extinguished upon the rendition of the decree.

But the appellees insist that as the defendants were infants, parol proof was legitimate. Whatever may be said in some of the books as to the powers of a chancellor to examine witnesses orally in order to protect the rights of infants, it is settled by the adjudications referred to, that the evidence must be in the record. The evidence can not be supplied by a recital in the record that the necessary facts were proven to the satisfaction of the Court below.

Our cases make no distinction between adult and infant defendants in this respect. In *Alexander* v. *Frary*, *supra*, in speaking of the rule that in chancery causes the record must contain all the evidence, the Court say, "this has always been the chancery rule without reference to infants."

The principle is, that on appeals in a chancery cause, this Court hears the cause upon its merits and decides it upon

the evidence in the record, and this principle is applicable where infants are defendants as well as adults. We are referred to the case of *Alexander* v. *Frary*, *supra*, and *McEndree* v. *McEndree*, 12 Ind. 97, as countenancing a different doctrine, but these cases do not sustain the position assumed. In *Alexander* v. *Frary*, the Court, in speaking of *Ward* v. *Kelly*, 1 Ind. 101, where the decree was reversed because the record did not show that proper proof had been made against a lunatic and an infant, say; " the true position of that and all the other cases is, that because they were chancery causes, therefore evidence must appear in the record." In this case, it was held that the code had done away with the distinction between the practice at law and in chancery, and that under the present practice, the finding of the Court, or the verdict of a jury, would be presumed to be right unless the evidence be set out and show the contrary, and this presumption attaches in case of infants as well as adults. The case was decided under the present code, but the old rule, as we have above stated it, is fully recognized. The case of *McEndree* v. *McEndree* refers to the case of *Alexander* v. *Frary* as deciding that a decree against an infant will not be reversed because the evidence is not in the record. ' That is true of a case decided under the present code, but neither of the cases intimate that such is the case in respect to a chancery cause decided under the old practice. The case of *McEndree* v. *McEndree* was decided below under the old practice, and the decision in this Court is entirely in harmony with the cases before noticed. It was held, that from the record it might be inferred that there was no evidence in the Court below, but there was an agreement on the part of the guardian, which was, in effect, an admission of the truth of the averments in the bill. The decree was reversed.

The case at bar, having been determined under the old practice, must be governed by the old rules. It appears to us that there was not sufficient evidence legally before the Court to sustain the decree, therefore it must be reversed.

*Per Curiam.*—The decree below is reversed, with costs, and the cause remanded.

*R. Jones* and *R. C. Gregory*, for appellants.

*J. E. McDonald, A. L. Roache, D. W. Voorhees* and *Z. Baird*, for appellees.