DENHAM ET AL. *v.* DEGYMAS ET AL.

[No. 29,623.   Filed January 17, 1958.   Rehearing denied
March 4, 1958.]

*Cope J. Hanley,* of Rensselaer, and *Philip M. Cagen,* of Valparaiso, for appellants.

*Ralph Bower,* of Kentland, *Michael L. Fansler* and *Fansler, Fauvre, Dongus & Chambers,* of counsel, of Indianapolis, for appellees.

EMMERT, C. J.—This is an appeal from a judgment for the appellees Albert M. Molson, Jr. and Dorothy Molson, his wife, entered upon four interrogatories answered by the jury, notwithstanding a general verdict for the appellants. The only issue now is did the trial court err in entering such judgment. In order to simplify the factual situation the appellants will be referred to hereafter as the plaintiffs and the appellees as defendants.

The plaintiffs filed a complaint in two paragraphs, the first seeking to quiet an equitable title to 540 acres of real estate in Newton County, and the second seeking specific performance of an oral contract with the defendant Daniel Degymas to convey the same land. There was no personal service of process upon Daniel

Degymas or his wife, but they were served by publication only and defaulted. No finding was made by the court on count 2, and as we construe the judgment it adjudicated nothing as to them on the second paragraph of complaint.

The record has no bill of exceptions containing the evidence, and if it did we would not be at liberty to consider it, since the rule is well settled, "This court will consider only the pleading, general verdict and interrogatories and answers, in determining whether a judgment should have been entered on the answers to interrogatories. *City of Jeffersonville* v. *Grey* (1905), 165 Ind. 26, 74 N. E. 611; *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25, 66 N. E. 156." *Talbot* v. *Meyer* (1915), 183 Ind. 585, 588, 109 N. E. 841. See also *L. S. Ayres & Co.* v. *Hicks* (1942), 220 Ind. 86, 92, 41 N. E. 2d 195, 356.[1]

The complaint in substance alleged that on the 15th day of January, 1953, the defendant Daniel Degymas was in possession of the land in controversy under a contract of sale with the defendant Helen Cunningham and that Degymas made an oral agreement to convey his interest in the real estate to the plaintiffs, Den-

---

1. "In determining this question we must be guided by the following rules laid down by this court: 'a general verdict will not be defeated by isolated facts disclosed by answers to interrogatories, unless such facts are shown to be so repugnant and contradictory to the general verdict that both cannot be true under any conceivable state of facts provable under the issues.' *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25, 27, 66 N. E. 156." *Jeffersonville Mfg. Co.* v. *Holden* (1913), 180 Ind. 301, 307, 102 N. E. 21.

The rule is, " 'that special findings of a jury control the general verdict only where irreconcilable therewith, and the antagonism must appear on the face of the record beyond the possibility of removal by any evidence legitimately admissible under the issues.' *American Car, etc., Co.* v. *Vance, supra.* See, also, *Indianapolis St. R. Co.* v. *Hockett* (1903), 161 Ind. 196, 67 N. E. 106; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512, 69 N. E. 253." *American Car, etc., Co.* v. *Adams* (1912), 178 Ind. 607, 614, 99 N. E. 993.

hams, for the consideration of $54,000, payable $6,000 cash in hand, and the balance in nine (9) equal annual installments; that the plaintiffs made the down payment of $6,000 to Daniel Degymas, entered into possession of the land, made improvements thereon, and were in possession at the time of the commencement of the action.

The complaint further charged that in order to secure a loan from the Production Credit Corporation, and at the suggestion of Daniel Degymas, plaintiffs did execute a written lease with Daniel Degymas on February 9, 1953, which was not for the purpose of setting forth the true agreements of the parties but only to obtain the loan of $6,000 used for the down payment; that thereafter on March 30, 1953, plaintiffs executed a release of the option therein contained to renew the lease on the representation that the Production Credit Corporation required it, but that no consideration was received for such release.

That, "Although plaintiffs frequently demanded delivery of a contract conveying said interest, Daniel Degymas failed and refused, and has to the date of this action failed and refused, to deliver such a conveyance." However, the complaint fails to allege the plaintiffs ever offered to pay the balance due on said alleged oral contract, or a tender to do so kept good by depositing the tender with the court.

The complaint then charged that the plaintiffs learned defendants Albert and Dorothy Molson were negotiating for a sale of the land with Daniel Degymas, that they informed the Molsons they were in possession as purchasers and Degymas had nothing to convey, but that the Molsons entered into an agreement for the purchase of the interest of Degymas, and that the Mol-

sons now claim ownership and possession in and to the lands.

The prayer of the complaint is as follows:

"WHEREFORE, plaintiffs pray that it be determined that the purported conveyance of Daniel Degymas to defendants Albert Molson and Dorothy Molson be declared null and void and of no effect, that no interest in said lands was thereby conveyed, relinquished or given, and that plaintiffs' title to said lands be quieted; and that plaintiffs be adjudicated the owners of the interest of defendant Daniel Deygmas as against defendants and the world, and for such other relief as equity shall seem meet."

The defendants, Albert Molson and Dorothy Molson, filed an answer in two paragraphs, the first being in denial, and the second in substance alleging that on the 27th day of October, 1951, Helen M. Boyle was the owner of the lands and on this date she sold the same by written contract to Daniel J. Degymas, who in turn assigned his interest in such contract to purchase to the defendants, Albert W. Molson, Jr. and Dorothy Molson, his wife, and that at all times since the 23rd day of April, 1953, the date of the assignment, said defendants Molson "were the equitable owners of the real estate involved in this controversy."

Exhibit A to the complaint was a copy of the Farm Lease, with the endorsement thereon of the release of the option to renew signed by William Denham and Pearl Denham. Exhibit A to the answer was the contract of purchase between Helen M. Boyle and Daniel J. Degymas, and Exhibit B was the written assignment of the purchaser's interest to the defendants Albert W. Molson, Jr. and Dorothy Molson.

The interrogatories submitted to the jury and the answers thereto are as follows:

1. "Did William Denham and Pearl Denham, plaintiffs, prior to April 23, 1953, enter into an oral contract with Daniel Degymas, one of the defendants herein, for the purchase of the 540 acres involved in this action?

Answer: Yes."

2. "Did William Denham and Pearl Denham, the plaintiffs, go into possession of the 540-acre farm pursuant to an oral contract of sale made with Daniel Degymas?

Answer: Yes."

3. "Did Albert Molson and Dorothy Molson, defendants herein, or either of them, have notice that William Denham and Pearl Denham were in possession of the 540 acres prior to April 23, 1953?

Answer: Yes."

4. "Did defendants, Albert Molson and Dorothy Molson or either of them, receive knowledge before April 23, 1953, that William Denham and Pearl Denham were in possession of the farm under an oral contract of purchase?

Answer: No."

The entry of the judgment for defendants is in the footnote.[2]

As far as the record on appeal shows, the complaint was not questioned by motion or by demurrer. There is no record showing any pleading was ever amended after it was filed.

Since there was no objection taken to the suffi-

2. "Come again the parties by their attorneys as heretofore appearing and the court having heard the argument on the motion filed by the defendants, Molson and Molson, for the court to render judgment on the interrogatories answered by the jury, notwithstanding the verdict of the jury, and the court being sufficiently advised in the premises, now sustains said motion and finds for the defendants, Albert W. Molson, Jr., and Dorothy Molson, that the plaintiffs take nothing by their action herein. It is therefore considered, adjudged and decreed by the court that the plaintiffs take nothing by their action herein and that the defendants, Albert W. Molson, Jr., and Dorothy Molson, have and recover of and from the plaintiffs, their charges and costs herein laid out and expended, and taxed at $............"

ciency of the complaint in the trial court, we cannot hold as a matter of law that the complaint failed to state a cause of action. Section 2-1011, Burns' 1946 Replacement. However, this statute did not and could not constitutionally relieve the plaintiff from proving his cause of action at the time of trial. *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157, 119 N. E. 369, 484; *Keltner* v. *Patton* (1933), 204 Ind. 550, 185 N. E. 270.

The briefs of appellants and appellees agree that a contract to sell an interest in real estate conveys to the purchaser an equitable title. See *Knapp* v. *Ellyson Realty Co., Inc.* (1937), 211 Ind. 180, 5 N. E. 2d 973. The appellees contend that interrogatory No. 4 and the answer thereto found that the Molsons were bona fide purchasers of whatever interest in the real estate Degymas had to convey. Had the Molsons purchased the legal title there would be more merit to the contention, but even then the interrogatory said nothing about "value."

In our opinion the decision by this court in *Gallion* v. *M'Caslin* (1820), 1 Blackf. 91, 12 Am. Dec. 208, fully disposes of the claim that the Molsons should be protected as bona fide purchasers.[3] In that case one Clark executed a bond for conveyance for a town lot in Brookville to M'Caslin, who went into possession. About a year afterward Clark gave a bond for title to the same real estate to one Gallion, who had no notice of the prior contract. The land was then in possession of a tenant who thereafter gave notice to Gallion that the lot was claimed by M'Caslin. Then Gallion and Clark prevailed upon the tenant to give

3. This leading case, written by Judge Blackford, is still cited as the law of vendor and purchaser. 92 C.J.S. 185, §304, note 23; 66 C. J. 1060, §826, note 7; 55 Am. Jur. 1061, §677, note 19.

possession to Gallion, the second purchaser, and the next day Gallion obtained the legal title for the lot from Clark. M'Caslin filed a bill in chancery and had a decree in the trial court from whch Gallion appealed.

The court held the contract and bond to convey title conveyed equitable title, and said: "Take it for granted that the defendant had fairly obtained an equitable title without any knowledge of the complainant's equity: at that time the parties stood upon equal ground as to the nature of their claims; and the right of the complainant, being the eldest, was entitled to the preference. But is contended that the defendant went on and procured the legal title, and thus obtained an advantage which ought not to be taken from him. It is true the purchase money was afterwards paid, and the title perfected; and had this been done before notice of *M'Caslin's* claim, the defendant would have been perfectly safe. But the fact is otherwise. *Gallion* had nothing but an equitable lien before notice. . . . But, in the present case, *M'Caslin* had the prior equitable right to the legal title from *Clark;* and, after *Gallion* had notice of it, his endeavor to obtain that title, and thus divest *M'Caslin* of his claim, was unjustifiable. The defendant knowingly attempted to destroy the complainant's prior and therefore superior equitable right, by strengthening the younger and inferior one of his own, by procuring the legal title from *Clark,* to which the complainant was best entitled. In such proceedings, the defendant cannot be protected in a Court of equity. We must put out of view everything done by him after notice. Before that time each of the parties had an equitable claim, and neither of them had anything more. In that situation of their controversy there is but one way to determine between them.

Whoever first acquired his right must have the property; for, in cases of conflicting equities, precedency of time gives the advantage in right. 1 Bibb. 523." (Pages 93, 94.)

Under the rule of *Gallion* v. *M'Caslin* (1820), 1 Blackf. 91, *supra,* a second bona fide purchaser of an equitable interest to convey real estate is not protected against the equitable interest of the first purchaser. Therefore, it was error to enter judgment on the interrogatories, since interrogatory No. 4 and the answer thereto did not establish a superior equitable interest in the defendants Molsons. But it does not necessarily follow that our mandate on reversal should order the trial court to enter judgment for the plaintiffs on the general verdict.

We are well aware that our courts have said upon occasion that on appeal the complaint may be considered amended to conform to the evidence. *Rushville Natl. Bk., Tr.* v. *State Life Ins. Co.* (1936), 210 Ind. 492, 1 N. E. 2d 445; *Boston* v. *Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 61 N. E. 2d 326. It is to be noted that there is no statute in our code, nor is there any rule of court which authorizes this. It is a fiction sometimes useful to accomplish substantial justice, but it is still a fiction and should not be employed where it may result in injustice or accomplish a variance.

The plaintiff in an action to quiet title must recover if at all upon the strength of his own title and not upon the lack of title in the defendant. *Kerfoot* v. *Kessener* (1949), 227 Ind. 58, 75, 84 N. E. 2d 190; *McPheeters* v. *Wright* (1887), 110 Ind. 519, 521, 10 N. E. 634; *Ragsdale* v. *Mitchell* (1884), 97 Ind. 458, 461.

" . . . Where a plaintiff, in a suit to quiet title, describes the title specifically as the only title on which he relies, his recovery must be had on his title as laid, *Ragsdale* v. *Mitchell* (1884), 97 Ind. 458, and where a plaintiff seeks to quiet title on the claim of absolute ownership, he is not entitled to relief by showing himself entitled to partition, or some other remedy of a different character, *Johnson* v. *Murray* (1887), 112 Ind. 154, 13 N. E. 273, 2 Am. St. 174." *Ault* v. *Miller* (1932), 203 Ind. 487, 493, 181 N. E. 35. And, " . . . where title is specifically pleaded, the particular allegations will control the general statements of the pleading." *McPheeters* v. *Wright* (1887), 110 Ind. 519, 520, 10 N. E. 634.

The parol evidence rule is not a rule of evidence but it is a rule of substantive law. 9 Wigmore, Evidence (3rd Ed.) §2400; 3 Williston, Contracts (Rev. Ed.), §631, p. 1813; Restatement, Contracts, §237, pp. 331, 332.[4] As the complaint appears in the record it is difficult to see why the alleged oral contract for sale, if there was one, was not merged in the lease for the same real estate. If the plaintiffs

---

4. "Except as stated in §§240, 241 the integration of an agreement makes inoperative to add to or to vary the agreement all contemporaneous oral agreements relating to the same subject-matter; and also, unless the integration is void, or voidable and avoided, all prior oral or written agreements relating thereto. If either void or voidable and avoided, the integration leaves the operation of prior agreements unaffected.

*Comment:*

*a.* This section states what is known as the parol evidence rule. The rule, however, is not one of evidence but of substantive law. Nor is it a rule of interpretation. It defines the subject-matter to be interpreted. Though the prior and contemporaneous agreements made inoperative by integration of a contract in writing are generally oral, this is not necessarily the case as to prior agreements. A prior written agreement is superseded by a later integration. Where writings relating to the same subject-matter are contemporaneous, both form part of the integration." Restatement, Contracts §237, p. 331, 332.

held under the lease pleaded, they could not quiet title to an equitable fee. Moreover, a vendor of real estate has a lien for any unpaid purchase price so plaintiff cannot prevail in a quiet title suit against the vendor. *Reed* v. *Kalfsbeck* (1896), 147 Ind. 148, 45 N. E. 476, 46 N. E. 466. This is true even though the debt to the vendor be barred by the statute of limitation. *Cassell* v. *Lowry* (1904), 164 Ind. 1, 72 N. E. 640. The complaint makes no contention that the first purchasers, Denhams, ever paid anything more than the $6,000 which they obtained from Production Credit Corporation on the strength of the lease.

With a record like this, we would be risking a gross miscarriage of justice to order the trial court to enter a judgment on the general verdict. The justice of the cause requires a new trial be ordered. Section 2-3234, Burns' 1946 Replacement.

Judgment reversed and new trial ordered.

Bobbitt, Landis and Arterburn, JJ., concur.

Achor, J., concurs in result.

NOTE.—Reported in 147 N. E. 2d 214.