Francis LAMB, Appellant
(Plaintiff Below),

v.

Johnny LAMB, Herbert A. Loveall, Sr., and Marvis J. Loveall, Appellees
(Defendants Below).

No. 61A04–9005–CV–236.

Court of Appeals of Indiana,
Fourth District.

April 16, 1991.

Susan D. Orr, Wallace, Campbell, Bunch, Shambach, Rennick & Orr, Covington, for appellant.

James A. Bruner, Rockville, for appellees.

CONOVER, Judge.

Plaintiff–Appellant Francis Lamb appeals the trial court's judgment in favor of Defendants–Appellees Johnny Lamb, Herbert A. Loveall, Sr., and Marvis J. Loveall.

We affirm.

Francis raises the following consolidated issue for our review:

> whether the trial court erred in finding the Lovealls to be the fee simple owners of six disputed acres.

The evidence most favorable to the judgment shows that in 1975, Vera Lamb conveyed a one-ninth undivided interest in twenty acres of land to each of her eight children and one daughter-in-law. However, she reserved a life interest in the estate. Shortly after the conveyance was made, eight of the grantees conveyed their interests by quitclaim deed to a single grantee, Johnny Lamb, to be held in trust for either reconveyance upon Vera's death, or for sale and equal distribution of proceeds from the sale.

Soon after Vera's death in 1985, Francis and the Lovealls expressed interest in purchasing the entire twenty acre tract. Francis and Johnny entered into a contract on August 12, 1987, whereby Johnny sold an undivided % interest to Francis. The sales price was dependent upon appraisals by two local real estate owners.

Neither brother mentioned the contract to the other grantees and Francis did not take possession or immediately pay for the land. However, soon thereafter, Johnny approached Francis for approval about conveying two and one-half acres of the twenty acre parcel to the Lovealls. Francis agreed, and Johnny executed a warranty deed to Marvis and Herbert on September 8, 1987. Johnny did not refer to the contract when discussing the two and one-half acre purchase with the Lovealls.

Francis obtained an appraisal and offered to pay Johnny the entire amount for the remaining seventeen and one-half acres. Because Johnny was ill, and because he believed he needed to secure the permission of the each grantee to complete the contract, he did not want to go to each of the others to offer the money. Accordingly, Francis began meeting with the other family members to pay each their share. By this method he was able to purchase eleven and one-half of the remaining seventeen and one-half acres. When two of the family members refused to talk with him, he asked for Johnny's help, but did not tender payment to Johnny to cover their shares. Johnny gave him a warranty deed for the acres paid for.

Meanwhile, the Lovealls desired to purchase more land, and after receiving the approval of two other grantees, they went to Johnny. Johnny agreed to sell them six acres. They paid for the land, and Johnny provided them with a warranty deed.

When Francis learned of the sale to the Lovealls, he contended the land should have been his because of his original contract. A family feud developed, which resulted in Francis filing a suit demanding specific performance of the contract. The trial court entered a general judgment in the Lovealls' favor. Francis now appeals.

A general judgment will be affirmed unless uncontradicted evidence leads to an opposite conclusion. *Indiana & Michigan Electric Co. v. Terre Haute Industries* (1987), Ind.App., 507 N.E.2d 588, 597, *reh. denied, trans. denied.* In the absence of specific findings of fact and conclusions of law, the judgment will be upheld if supported by any legal theory. *Hunter v. Milhous* (1973), 159 Ind.App. 105, 305 N.E.2d 448, 459.

The appellees contend the evidence presented to the trial court supports the conclusion that Marvis was a bona fide purchaser of the six acres. Thus, they conclude the trial court's judgment is supported by the evidence.

On the other hand, Francis cites *Mishawaka St. Joseph Loan and Trust Co. v. Neu* (1935), 209 Ind. 433, 196 N.E. 85, and contends the Lovealls had implied notice of his contract with Johnny.[1] Francis also cites *Bandy v. Myers* (1967), 141 Ind.App. 220, 227 N.E.2d 183, as authority for the proposition that even if the Lovealls did not have notice and were bona fide purchasers, their title was not protected against his equitable title.

In *Mishawaka, supra,* our supreme court defined notice to include implied notice. The court stated:

> [A]ctual notice has been divided into two classes, (1) express and (2) implied, which is inferred from the fact that the person charged had means of knowledge which he did not use. Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination, which, if made, would disclose the exist-

ence of other facts is sufficient notice of such other facts. (Citations omitted).

196 N.E. at 89–90.

Francis contends the fact the Lovealls observed him clearing underbrush on the disputed six acres, coupled with their later knowledge of his purchase of the remaining eleven and one-half acres, put them on notice that an inquiry should be made. He further contends their failure to inquire was chargeable to them. We disagree.

The evidence shows at the time the Lovealls observed Francis cutting brush on the disputed acres, all the grantees had an undivided interest in the twenty acres. When the Lovealls did ask Francis why he was on the disputed acres, he did not make a claim of ownership. His actions were not so unusual for the owner of an undivided interest that any further inquiry was required by the Lovealls. The Lovealls later knowledge that Francis had acquired a deed for eleven and one-half acres and had approached two other grantees was not sufficient to put them on inquiry notice. In fact, from the Lovealls' point of view, Francis' attempt to purchase from the two grantees was an indication that he did not have a contract. Based on the evidence in the record, the trial court could have concluded the Lovealls were bona fide purchasers with no notice of Francis' interest.

Furthermore, we find that Francis incorrectly interprets *Bandy, supra.* When read in context, and in conjunction with the cases cited therein, it is apparent *Bandy* does not stand for the proposition that a first purchaser's equitable right is superior to bona fide purchaser's *legal* right.[2] The theory behind the bona fide purchaser defense is that every reasonable effort should be made to protect a purchaser of legal title for a valuable consideration without notice of a legal defect. *See,* 77 Am.Jur.2d *Vendor and Purchaser* § 633 (1975). If we were to interpret *Bandy* as

---

1. Francis concedes that the Lovealls did not have express notice of his interest in the disputed property.

2. *See, Denham v. Degymas* (1958), 237 Ind. 666, 147 N.E.2d 214, 218, which holds "a second bona fide purchaser of an *equitable* interest to convey real estate is not protected against the equitable interest of the first purchaser." (emphasis supplied). This case was cited as authority in *Bandy.*

Francis suggests, we would completely emasculate the defense.

Affirmed.

CHEZEM and BAKER, JJ., concur.