## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew A. Ault
Ault Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Ryan J. Vershay
Derek G. Raymond
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darko Ventures LLC S Series 101, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Crystal Varela, et al., <br><br> *Appellees-Defendants.* | October 5, 2020 <br><br> Court of Appeals Case No. 20A-PL-921 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable John M.T. Chavis II, Judge <br><br> Trial Court Cause No. 49D05-1810-PL-42164 |

**Bailey, Judge.**

# Case Summary

[1] This litigation concerns competing interests in a parcel of real estate (the "Property"). In the action, Darko Ventures LLC S Series 101 ("Darko") sought an order authorizing a clerk's deed conveying the Property to Darko. The trial court issued the requested order without conducting a trial and without a motion for summary judgment before it. Defendants Crystal Varela ("Crystal") and Gustavo Martinez (collectively, "C&G") moved to correct error, seeking to vacate the order authorizing the clerk's deed. The trial court later granted C&G's motion to correct error, thereby vacating the order and setting the case for further proceedings on the competing interests. Darko then filed a motion to correct error, which was deemed denied. Darko now appeals, seeking to reinstate the order authorizing a clerk's deed. Herein, we conclude that the order authorizing a clerk's deed was premature—stemming from irregular procedures—and so we discern no abuse of discretion in granting C&G's motion to correct error and denying Darko's motion to correct error. We therefore affirm those rulings and remand for further proceedings below.

# Facts and Procedural History

[2] In 2018, Darko filed the instant action against Jaime A. Varela ("Jaime").[1] Darko later amended its complaint, adding C&G as defendants. In the five-

---

[1] Jaime does not actively participate on appeal.

count complaint, Darko alleged that, on or before October 3, 2018, Jaime owned the Property. Darko alleged that it agreed to purchase the Property from Jaime for $20,000 through a contract dated October 3, 2018 (the "Contract").

[3] Counts I, II, and V were directed toward Jaime. In Count I, Darko alleged that Jaime breached the Contract because he "failed and refused to close" the transaction. Appellant's App. Vol. 2 at 33. In Count II, Darko alleged that Jaime committed fraud because his "true intention" was nonperformance. *Id.* at 34. Darko sought damages in connection with those counts. As to Count V, Darko alleged that it had "no adequate remedy at law to enforce the provisions of [the Contract] other than specific enforcement and performance." *Id.* at 37. Darko sought an order compelling Jaime to convey the Property to Darko.

[4] Pertinent to Counts III and IV were allegations that, on October 4, 2018—the day after Darko and Jaime entered into the Contract—Jaime executed a quitclaim deed conveying the Property to C&G. In Count III, Darko alleged that C&G tortiously interfered with the Contract. In Count IV, Darko alleged that the quitclaim deed to C&G was a fraudulent conveyance. Darko alleged that Crystal is a relative of Jaime, that C&G paid no consideration for the quitclaim deed, and that C&G "were not bona fide purchasers." *Id.* at 36. Darko alleged that it was "a bona fide purchaser." *Id.* As to Count IV, Darko sought an order (1) "decreeing that [Jaime] fraudulently conveyed [the Property] to [C&G]" and (2) declaring "that such conveyance is . . . void[.]" *Id.* at 37. Darko also sought an order compelling Jaime "to convey title" to it. *Id.*

[5] C&G filed an answer in which they denied the allegations that there was no consideration for the deed and that C&G were not bona fide purchasers. Meanwhile, Darko sought a default judgment against Jaime, alleging that Jaime had failed to participate in the action. In February 2019, the trial court granted Darko's motion for a default judgment. In granting the motion, the trial court ordered Jaime "to sell and transfer [the Property] to [Darko] pursuant to" the Contract. *Id.* at 43. The order provided that, if Jaime was "unable to pass title to the [P]roperty as ordered," Jaime was to pay Darko $44,000 in monetary damages. *Id.* The order stated that Jaime's "subsequent sale . . . to third parties other than [Darko] is VOID." *Id.* In the next sentence, the order specified that C&G's "alleged purchase of the [P]roperty is unaffected" by the default judgment. *Id.* The order further stated that "[t]he determination of whether an arm's length transaction exists is yet to be determined[.]" *Id.*

[6] Darko later filed a Trial Rule 70 motion alleging that Jaime "continue[d] to refuse to sell and transfer" the Property. *Id.* at 46. Darko did not seek the monetary damages authorized by the order, instead asking the trial court to "[d]irect[] the Clerk of the Court to sign and effectuate any and all closing documents and execution of a deed transferring title" to Darko. *Id.* at 48.

[7] C&G objected to Darko's motion. C&G pointed out that they had "asserted in their answer that they were the bona fide purchasers of the [P]roperty[.]" *Id.* at 50. C&G directed the court to the order on default judgment, alleging that the order (1) had not affected C&G's purported acquisition of the Property and (2) had reserved the issue of whether C&G acquired the Property at arm's length.

[8]     The trial court held a hearing on Darko's motion.  At the hearing, the parties argued about the effect of the quitclaim deed to C&G and whether C&G could be considered bona fide purchasers of the Property.  Darko asserted that it was entitled to a clerk's deed and that the quitclaim deed to C&G was void.  Darko directed the trial court to the quitclaim deed attached to the complaint, asserting that the deed itself contained a statement that no consideration was paid.  C&G asserted that, despite what the quitclaim deed stated, they acquired the Property for in-kind consideration of about $47,000 and without notice of the Contract.

[9]     On September 26, 2019, the trial court entered a written order granting Darko's motion for a clerk's deed.  Through the order, the court effectively quieted title to the Property by (1) finding that C&G were not bona fide purchasers and (2) directing the Marion County Clerk to "sign and effectuate . . . execution of a deed transferring title of [the Property] to [Darko]."  *Id.* at 67.  Thereafter, the clerk executed a quitclaim deed.  The deed stated that the deed to C&G had been declared void and that the clerk was "appointed to act in stead of [Jaime] to effectuate the sale of [the Property] to [Darko.]"  *Id.* at 69.  The deed granted Darko "all rights, title and interest" held or claimed by Jaime and C&G.  *Id.*

[10]    The deed was recorded on October 11, 2019.  Darko then moved to dismiss the tort claim in Count III, and the trial court granted the motion.  Meanwhile, the day the deed was recorded, C&G filed a consolidated Trial Rule 59 motion to correct error and Trial Rule 60(B) motion for relief from judgment.  C&G asked the trial court to vacate the order authorizing a deed and "proceed to a determination of the outstanding claims and defenses as between [Darko] and

[C&G] including but not limited to the issue of . . . ownership of [the Property], and the issue of whether [C&G] purchased [the Property] through an arm's length transaction." *Id.* at 73. Following a hearing, the court granted C&G's motion—vacating the prior order and setting the case for further proceedings. Darko subsequently filed a motion to correct error, which was deemed denied.

Darko now appeals.[2]

# Discussion

Darko argues that the trial court abused its discretion by granting C&G's motion to correct error, thereby vacating the September 2019 order authorizing the clerk's deed. We review a ruling on a motion to correct error for an abuse

---

[2] In its Notice of Appeal, Darko asserts that it is pursuing an Interlocutory Appeal as of Right pursuant to Indiana Appellate Rule 14(A). Notably, the instant appeal stems from the September 2019 order authorizing a clerk's deed. That order was interlocutory when it was entered because, at that time, Darko's tort claim remained pending against C&G. Subsequently, however, the trial court granted Darko's motion to dismiss the tort claim. The effect of that dismissal was to dispose of all claims as to all parties, giving rise to a final judgment in this matter. *See* App. R. 2(H)(1) (specifying that a judgment is final if "it disposes of all claims as to all parties"). C&G timely filed a motion to correct error and the trial court granted the motion, thereby vacating the order authorizing a clerk's deed. *See* Ind. Trial Rule 59(F). Darko then timely filed a motion to correct error, which was deemed denied. *See* T.R. 59(C). Thus, despite Darko's assertion that it is pursuing an Interlocutory Appeal as of Right pursuant to Appellate Rule 14(A), we conclude that this Court instead has jurisdiction because the appeal arises from a ruling on a motion to correct error. *See* App. R. 5 & 2(H)(4).

We note that, had this appeal involved an interlocutory order, we discern no basis for jurisdiction through Appellate Rule 14(A). In invoking this rule, Darko did not identify an applicable subsection. Looking to Rule 14(A) and its nine subsections, the closest fit appears to be subsection 14(A)(4), which permits an appeal of an interlocutory order "[f]or the sale or delivery of the possession of real property[.]" Here, however, the pertinent order **vacated** an order involving the sale of real property, so it is not an order **for** the sale of real property. *See, e.g.*, *Moser v. Moser*, 838 N.E.2d 532, 535 (Ind. Ct. App. 2005) (determining that 14(A)(4) "does not apply when the order is one *denying* a party's prayer for the delivery of immediate possession of real property"), *trans. denied*. Ultimately, although we are satisfied that this Court has jurisdiction, we write to emphasize the importance of carefully considering jurisdiction in each appeal. To that end, we encourage the practice of citing to a specific subsection that affords jurisdiction—especially when relying on Rule 14(A).

of discretion. *Sims v. Pappas*, 73 N.E.3d 700, 705 (Ind. 2017). "An abuse of discretion occurs when the decision misinterprets the law or clearly contravenes the logic and effect of the facts and circumstances[.]" *Smith v. Franklin Twp. Cmty. Sch. Corp.*, No. 20S-CT-98, 2020 WL 5014919, at *2 (Ind. Aug. 25, 2020).

## Waiver

As an initial matter, Darko argues that C&G waived any challenge to the issuance of a clerk's deed. "Waiver is a form of procedural default or a forfeiture of rights." *Batchelor v. State*, 119 N.E.3d 550, 557 n.4 (Ind. 2019).

Darko points out that its motion for a clerk's deed sought to enforce the default judgment entered against Jaime. Darko refers to the order as a "judgment of specific performance" requiring Jaime to convey the Property to Darko. Br. of Appellant at 21. Darko suggests that the order would inevitably result in a deed conveying the Property to Darko, so C&G should have challenged the order on default judgment instead of the ensuing motion for a clerk's deed. According to Darko, C&G's failure to challenge the earlier order resulted in waiver.

Darko oversimplifies the trial court's order on default judgment. Although the order was not a model of clarity, the order did not purport to deprive C&G of all interest in the Property. Instead, the order expressly reserved the issue of C&G's alleged interest. Moreover, we disagree that a deed was the inevitable outcome of the order. Rather, the order provided for damages if Jaime could not convey the Property to Darko. Thus, if Jaime lacked title due to the quitclaim deed to C&G, it follows that Jaime would be unable to convey the

Property and would therefore be obligated to pay damages to Darko. The payment of those damages would not affect C&G's recorded interest. We are therefore not persuaded by the argument that C&G waived any challenge. Nor are we persuaded that, as Darko suggests, C&G's failure to challenge the default judgment against Jaime amounted to a waiver of due process rights.[3]

## Conflicting Interests

Darko contends that C&G failed to place at issue any interest in the Property. According to Darko, C&G was involved only as to Count III, the claim of tortious interference. Darko contends that it never sought to quiet title to the Property and that C&G should have filed a counterclaim asserting an interest. Darko argues that, without a counterclaim, the court should not have allowed C&G to challenge the motion for a clerk's deed. Darko also notes that the clerk's deed stemmed from a default judgment against Jaime, not C&G. Darko argues that the court "abused its discretion by vacating its finding, as to Jaime," that C&G are not bona fide purchasers "because as to Jaime [this fact] was fully established by the default judgment and the public records." Reply Br. at 7.

An action to quiet title is an action to resolve conflicting interests in real property. *See generally* Ind. Code §§ 32-30-2-1 & -2-4; *see also Action*, Black's

---

[3] Darko also argues that C&G "lacked standing to object to the enforcement of the [default] judgment," Br. of Appellant at 34, characterizing C&G as nonparties "seeking to intervene in a case already decided in Darko's favor," *id.* at 35-36. Darko further asserts that C&G argue "without cogency as to standing" in their brief. Reply Br. at 10. However, as we later discuss herein, C&G's alleged interest was at issue in this action. We are therefore not persuaded that C&G lacked standing to object to a deed regarding the Property.

Law Dictionary (11th ed. 2019) (defining this type of action as "[a] proceeding to establish a plaintiff's title to land by compelling the adverse claimant to establish a claim or be forever estopped from asserting it"). The outcome of the action may turn on whether a party is a bona fide purchaser. *See, e.g.*, *Denham v. Degymas*, 147 N.E.2d 214, 218 (Ind. 1958). Whether a party is a bona fide purchaser is generally a question of fact. *See generally Crown Coin Meter Co. v. Park P, LLC*, 934 N.E.2d 142, 148 (Ind. Ct. App. 2010) (discussing notice).

[18] In the complaint, Darko alleged that it had an interest in the Property arising from the Contract. Although Darko now attempts to focus on Count III—the claim of tortious interference against C&G—in Count IV, Darko alleged that the quitclaim deed conveying the Property to C&G was fraudulent. Darko further alleged that, while Darko was "a bona fide purchaser," C&G "were not bona fide purchasers." Appellant's App. Vol. 2 at 36. Darko asked the court to "enter an order decreeing that [Jaime] fraudulently conveyed [the Property] to [C&G]" and that "such conveyance is therefore declared void[.]" *Id.* Darko also requested an order compelling Jaime to convey the Property to Darko.

[19] Darko suggests that Count IV was limited to the dealings between Darko and Jaime. Yet, in Count IV, Darko asked the trial court to declare the conveyance to C&G void. Declaring as much would divest C&G of their title to the Property, altering the respective positions of the parties. Ultimately, regardless of whether any count in the instant complaint contains the phrase "quiet title,"

Darko plainly sought to resolve conflicting interests in the Property. We therefore conclude that C&G were defendants in an action to quiet title.[4]

[20] Turning to whether C&G's interest was properly at issue, Indiana Code Section 32-30-2-5 provides that, in an action to quiet title, the defendant's answer "may contain a denial of each material statement or allegation in the plaintiff's complaint." The statute provides that, "[w]ith each denial, the defendant may give in evidence every legal or equitable defense to the action that the defendant may have." I.C. § 32-30-2-5. Furthermore, Trial Rule 64(C) provides that, in an action to quiet title, "the defendant in his answer may deny the plaintiff's claim of title and thereby place in issue the defendant's title or interest[.]"

[21] Darko argues that C&G should have filed a compulsory counterclaim against Darko. Yet, in their answer, C&G denied Darko's allegation that C&G were not bona fide purchasers. Thus, even if Darko's allegations in Count IV did not put C&G's interest in the Property at issue in this action, C&G's interest was

---

[4] Having concluded that Darko initiated an action to quiet title through the allegations in Count IV, we disagree with its suggestion that C&G were no longer parties to the lawsuit due to the dismissal of Count III.

properly placed at issue by operation of both Indiana Code Section 32-30-2-5 and Trial Rule 64(C).[5] There was no need for C&G to file a counterclaim.[6]

[22] Ultimately, although Darko asserts that the allegations involving C&G were limited to tortious interference, we disagree. Because C&G's interest was at issue in this action, we discern no error in allowing C&G to object to Darko's motion for a clerk's deed and to subsequently pursue a motion to correct error.

## Procedural Irregularities

[23] Generally, litigation is resolved through a trial or proceedings on a motion for summary judgment. *See generally* T.R. 39(A) (providing that factual issues will be tried to a fact-finder); T.R. 56 (setting forth summary-judgment procedures for purely legal issues). Here, without conducting a trial and without a motion for summary judgment before it, the court found that C&G were not bona fide purchasers and that Darko was entitled to a clerk's deed "transferring title of [the Property]" to Darko. Appellant's App. Vol. 2 at 67. Moreover, although Darko suggests that the deed merely secured Jaime's specific performance, the ensuing deed divested C&G of their interest in the Property. At bottom, then, the proceedings below allowed Darko to use a default judgment against one

[5] Darko asserts that C&G refer to Trial Rule 64(C) for the first time on appeal. To the extent Darko is arguing waiver, we disagree that C&G have waived the legal effect of their pleading. Moreover, having concluded that C&G's interest was at issue due to the pleading, we disagree with Darko's contention that C&G's now-pending filing—a motion for leave to file counterclaims, crossclaims, and a third-party complaint, filed after the September 2019 order was vacated—indicates that their interest was never at issue.

[6] Darko acknowledges as much. Indeed, although Darko disputes the nature of the action, it acknowledges that "[i]f this were a quiet title suit, [the] denial would in fact operate as a form of claim[.]" Reply Br. at 9.

defendant to bypass formal proceedings regarding another defendant's interest. We conclude that it was procedurally improper to resolve the action this way.

[24] Due to the irregular procedures leading to the clerk's deed, we cannot say it was an abuse of discretion to vacate the September 2019 order and set the case for further proceedings.[7] Thus, the court did not abuse its discretion by granting C&G's motion to correct error and denying Darko's motion to correct error. We therefore affirm those rulings and remand the case for further proceedings.[8]

# Appellate Damages

[25] Indiana Appellate Rule 66(E) authorizes this Court to "assess damages if an appeal . . . is frivolous or in bad faith." Pursuant to the rule, "[d]amages shall be in the Court's discretion and may include attorneys' fees." App. R. 66(E). Importantly, although we have "authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Picket Fence Prop. Co. v. Davis*, 109 N.E.3d 1021, 1033 (Ind. Ct. App. 2018), *trans. denied*.

---

[7] Having determined that the irregular procedures supported the decision to vacate the order, we need not address the parties' arguments as to whether those irregularities amounted to a constitutional violation.

[8] On appeal, Darko invites us to address the merits of C&G's alleged interest, arguing about the adequacy of consideration and the effect of a quitclaim deed, *inter alia*. Critically, however, the trial court has not yet resolved this action to quiet title through full and fair procedures. For this reason, we decline to address the merits of the parties' competing interests. For the same reason, we disagree with Darko's assertion that C&G are somehow collaterally estopped from litigating the merits due to the court's premature findings below. *See, e.g.*, *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (explaining that the doctrine of collateral estoppel—also known as issue preclusion—(1) bars a party from relitigating a fully adjudicated issue and (2) applies only where the party had a full and fair opportunity to litigate that issue).

C&G argue that the appeal is frivolous and pursued in bad faith. Asserting several grounds for damages, C&G allege that—among other things—Darko misrepresented the record and should have included additional documents in its appendix. Having reviewed all of C&G's contentions, we ultimately elect to exercise restraint and therefore decline to award appellate damages to C&G. Moreover, to the extent Darko suggests that alleged deficiencies in the Brief of Appellee warrant appellate damages, we decline to award damages to Darko.

Affirmed and remanded for further proceedings.

Vaidik, J., and Weissmann, J., concur.